IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JYQWAVOUS WHITAKER,

    Plaintiff,

      v.

VICTOR HILL, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:23-CV-3552-TWT

**OPINION AND ORDER**

This is a civil rights action. It is before the Court on Defendant Correct Health Clayton, LLC's [1] ("CorrectHealth") Motion to Dismiss or, in the alternative, for Summary Judgment [Doc. 55]. For the reasons set forth below, Defendant CorrectHealth's Motion [Doc. 55] is GRANTED in part and DENIED in part.

### I.  Background

Plaintiff Jyqwavous Whitaker alleges that he received inadequate medical care while in the Defendants' custody. In January 2021, Whitaker was injured by gunshot wounds during an incident and taken to the hospital for surgery shortly thereafter. (Compl. ¶ 15 [Doc. 1].) One hour after the surgery, Clayton County police officers arrested Whitaker, transported him to the police department, and proceeded to interrogate him for several hours. (*Id.* ¶ 13.) He

---

[1] Defendant Correct Health Clayton, LLC maintains that the company's correct spelling is "CorrectHealth Clayton, LLC." (*See* Def.'s Mot. to Dismiss, at 1.)

repeatedly reported being in "severe pain" and requested medical attention, but the officers refused. (*Id.* ¶¶ 14–15.) Whitaker was locked in the interrogation room for approximately eight hours. (*Id.* ¶ 15.) A supervising officer called an ambulance afterward, and the ambulance personnel "stated that Plaintiff needed to be transported back to the [hospital] for treatment and medication," as he "was in hypertension II." (*Id.* ¶ 17.) Rather than sending Whitaker to the hospital on the ambulance, however, the Clayton County police officers took him into custody and "asserted that Plaintiff could receive treatment at the Clayton County Jail." (*Id.*) Whitaker apparently missed several "surgical and post-surgical appointments" while in custody," allegedly resulting in the permanent webbing and scissoring of his fingers. (*Id.* ¶¶ 19–20.) Whitaker alleges that such damage would not have occurred had Whitaker been properly and timely treated. (*Id.*)

The Complaint contains two claims: (1) a deliberate indifference claim under 42 U.S.C. § 1983, and (2) a state law claim for negligence. Several Defendants have already been dismissed at this stage, and now Defendant Correct Health Clayton, LLC— the company contracted by the Jail to provide medical care to those detained—is the sole remaining Defendant. (*Id.* ¶ 7.) CorrectHealth presently seeks dismissal of this action for failure to prosecute or, alternatively, summary judgment for lack of evidence.[2]

---

[2] Whitaker filed his response brief to this motion four days after the

2

## II. Legal Standard

Rule 41(b) authorizes dismissal with prejudice of an action or any claim "[i]f the plaintiff fails to prosecute." Fed. R. Civ. P. 41(b). Courts treat this sanction as a "last resort, applicable only in extreme circumstances." *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985) (citing *Jones v. Graham*, 709 F.2d 1457, 1458 (11th Cir. 1983) (per curiam)). Dismissal under Rule 41(b) is appropriate only where (1) "a party engages in a clear pattern of delay or willful contempt" and (2) "lesser sanctions would not suffice." *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337–38 (11th Cir. 2005) (citations omitted).

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and

---

deadline. The Court will consider Whitaker's response brief in this instance but cautions that he must comply with all deadlines going forward.

present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

### III.   Discussion

The Court declines to dismiss this case for failure to prosecute under Rule 41(b) but holds that summary judgment in favor of Defendant CorrectHealth is appropriate.

### A.   Failure to Prosecute

CorrectHealth asks the Court to dismiss this action in its entirety for Whitaker's failure to prosecute. It points to its unsuccessful attempts to schedule a Rule 26(f) conference;[3] Whitaker's delayed and supposedly inadequate discovery responses; and Whitaker's failure to serve discovery requests, notice depositions, or disclose expert witnesses. (*See* Def.'s Mot. to Dismiss, at 2.) In response, Whitaker contends that he participated in teleconferences with CorrectHealth, satisfactorily responded to discovery requests, and made clear his intent to rely on the testimony of his treating physicians and other available medical records. (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, at 6–7 [Doc. 59].)

The "extreme" sanction of Rule 41(b) dismissal is not warranted in this case. Given the information available regarding the party's conduct, the Court

---

[3] CorrectHealth did not file an affidavit averring to this fact, but it did attach an email chain for the Court's reference. (*See generally* Def.'s Mot. to Dismiss, Ex. B [Doc. 55-2].)

is not persuaded that Whitaker has "engage[d] in a clear pattern of delay or willful contempt" sufficient to justify the wholesale dismissal of this case. *See Betty K*, 432 F.3d at 1337–38. The communication between the parties has been intermittent but has not halted altogether. (*See* Def.'s Mot. to Dismiss, Ex. B, at 2–8 [Doc. 55-2]; Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, Ex. 6 ¶¶ 4–6 [Doc. 59-6].) To the extent Whitaker's discovery responses were inadequate, the appropriate and first-resort remedy would have been a motion to compel, which CorrectHealth did not file. Additionally, while Whitaker's decision not to serve discovery requests or take depositions may be unusual, neither is strictly necessary in the course of litigation. Lastly, regarding the disclosure of expert witnesses, Whitaker explains in briefing that he "made clear" to CorrectHealth he would rely on his treating physicians as expert witnesses. CorrectHealth did not respond to this claim. The Court therefore denies CorrectHealth's Motion to Dismiss for failure to prosecute.

### B. Summary Judgment

The Court holds that CorrectHealth is entitled to judgment as a matter of law on both counts in this case. The Court discusses each in turn. Regarding the § 1983 deliberate indifference claim (Count I), Whitaker has failed to show a genuine dispute of material fact as to CorrectHealth's *Monell* liability. When a municipality contracts a private company such as CorrectHealth to provide medical care to detainees, that company receives the protection of *Monell*

5

liability. *Craig v. Floyd County*, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997)). Under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), a § 1983 claim against a municipality (or contracted entity performing similar functions) will fail unless the plaintiff can show that the alleged injury resulted from that entity's "policy or custom." *Id.* at 694. *Monell* liability ensures that "a municipality cannot be held liable *solely* because it employs a tortfeasor." *Id.* at 691.

"Because municipalities rarely have an official policy that endorses a constitutional violation," the key question is whether they had a custom of such that "may fairly be said" to represent official policy. *Craig*, 643 F.3d at 1310. A "custom" for § 1983 purposes is "a longstanding and widespread practice . . . deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Id.* at 1310 (citation modified) (quoting *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)); *see also Brown*, 923 F.2d at 1481 (requiring a plaintiff to show a "widespread practice that . . . is so permanent and well settled as to constitute a custom or usage with the force of law" (citation modified)). To establish a custom of deliberate indifference, plaintiffs most often allege a "pattern of constitutional violations [ ] such that the municipality knows or should know that corrective measures are needed." *Young v. City of Augusta*, 59 F.3d 1160, 1172 (11th Cir.

6

1995).

In this case, Whitaker has not provided any evidence evincing that CorrectHealth (or Clayton County by extension) had a custom of deliberate indifference to detainees' medical needs. And, in fact, Whitaker never expressly addresses CorrectHealth's *Monell* liability arguments. While Whitaker provides his health records to indicate that multiple appointments were missed, cancelled, or rescheduled, these records are insufficient. Missed appointments with respect to one detainee cannot be said to constitute a County-authorized "longstanding and widespread practice" of deliberately withholding medical care. *See Craig*, 643 F.3d at 1310; *see also Hawk v. Klaetsch*, 522 F. App'x 733, 735 (11th Cir. 2013) ("We fail to see how three incidents over the span of nearly five years can constitute frequent, widespread, or rampant abuse."); *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986) ("Normally . . . isolated incidents are insufficient to establish a custom or policy." (citation omitted)). It may be true that Clayton County and CorrectHealth had such a custom, but Whitaker has failed to provide any evidence establishing such. The Court thus grants summary judgment in CorrectHealth's favor as to Count I of the Complaint.

Regarding the negligence state law claim (Count II), Whitaker has similarly failed to provide evidence for the necessary elements of his negligence claim. The Court broadly construes Whitaker's claim as a medical malpractice

7

claim (or professional negligence claim). In Georgia, a plaintiff pursuing a medical malpractice claim must establish a duty, "the breach of that duty by failing to exercise the requisite degree of skill and care," and proximate causation. *Zwiren v. Thompson*, 276 Ga. 498, 499 (2003) (citation omitted). Moreover, "the plaintiff must use expert testimony" to establish proximate causation "because the question of whether the alleged professional negligence caused the plaintiff's injury is generally one for specialized expert knowledge beyond the ken of the average layperson." *Id.* at 500.

Here, Whitaker's proffered evidence[4] is insufficient to avoid summary judgment. Whitaker admits that "it would have been better practice for the Plaintiff to depose his own surgeon" to provide testimony about his finger injury, but in lieu of such testimony, he provides a certified copy of his hospital records as evidence of causation. (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, at 7). Within those records, Whitaker points to a note from his surgeon in February 2021:

> [Patient] and I agree that index finger is unlikely to recover significantly. Index finger is scissoring and prevents meaningful use of middle finger. . . . Plan for surgery when he is no longer incarcerated. . . . Jyqwavous [Whitaker] has noticed his left index finger progressively deviating medially over the past 2 months. It is now pressing against his third left digit and inhibiting his ability to make a fist. He is still in Clayton [County] jail and they have not brought [the] patient to his scheduled post ops."

---

[4] The Court does not assess the authenticity or admissibility of Whitaker's proffered evidence because summary judgment is appropriate even if all evidence was deemed admissible.

8

(Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, Ex. 3, at 6 [Doc. 59-3].) While this note suggests that the injury may have significantly worsened while Whitaker was in CorrectHealth's custody and not attending appointments, it does not specifically speak to causation. Importantly, the surgeon noted that Whitaker had not attended certain "scheduled post ops," but this fact is not sufficient by itself to show (or allow an inference that) the missed appointments and similar delays *caused* the alleged injury. Specialized expert testimony is required to establish such, *see Zwiren*, 276 Ga. at 500, as it could just as easily be the case that Whitaker's injury may have worsened to the same degree regardless of whether Whitaker timely attended his appointments. This lack of evidence entitles CorrectHealth to summary judgment on Count II.

## IV.   Conclusion

For the reasons set forth above, Defendant CorrectHealth's Motion to Dismiss, or in the alternative, for Summary Judgment [Doc. 55] is GRANTED in part and DENIED in part. The Defendant's Motion is GRANTED as to the request for summary judgment and DENIED as to the request to dismiss for failure to prosecute.

SO ORDERED, this ___13th___ day of January, 2026.

*[signature]*
THOMAS W. THRASH, JR.
United States District Judge